Good morning, my name is Vicki Merol Buchanan. I'm here on behalf of Mr. Negbenebor. I would like to reserve three minutes. On June 28, 2013, at 6 a.m., while Mr. and Mrs. Negbenebor and their children slept in their home in Sugarland, Texas, the government executed a search warrant on their home. This is what they presented to Mr. Negbenebor. It's one page. This search warrant contains the address of the place to be searched, which was correct, and it also contains a statement as to the property that is to be searched, which was to be attached on Attachment B. Attachment B was never served. Which had been filed under seal, right? No, not B. Well, it was part of the affidavit, but there's absolutely nothing in Attachment B that should be sealed. I wasn't asking what the warrant was executed. Attachment B was on the seal. Well, it was contained within the affidavit, which was 69 pages long, and the 13-page addendum, which should have been stapled to the warrant, shouldn't have been sealed. Why don't you start with yes or no? Yes. And then you can explain. The You know, you sort of complicated the question. You understand, Exhibit B, which is the reference that's containing the items to be seized, and it was sealed at the time the warrant was served. Yes or no? I mean, we can talk about the circumstances. It was sealed as part of, as an attachment also. Why don't you start with yes? Yes, okay. It was sealed. Okay. So given that it was sealed, why couldn't the officers reasonably believe that they weren't allowed to serve it because it was sealed? I mean, they were under court order, essentially, not to be in contempt. I mean, I tell you the truth. I don't know what happens to people when they divulge stuff that's on the seal, but I assume district judges get... They could have gone... I'm happy with that, and they do unpleasant things to people who divulge things that are on the seal, right? Correct, but they also could have gone to the magistrate judge. No, they could have, and perhaps you're saying perhaps there should not have been on the seal, but as a matter of fact, it wasn't the seal, and we are testing here for bad faith, unreasonableness, right? Why wasn't it reasonable for the officers to say, look, we're serving a warrant. We give the subject the part that's not sealed, but we don't have the authority to give him the part that's sealed. Why is that a reasonable non... Because the unsealed part says nothing. It's completely... Did your client ask for the attachments? No, and I don't know that there's nothing in the record that says he did. Okay. No, this is it. So it's not like they said, no, or we won't try or anything like that, as far as the record is concerned? So your client didn't push it with There is nothing in the record that says that he did. Okay. It probably would have been a good time at some point to have developed that if you'd asked the question, but so you have no evidence that he... I have no evidence that he asked for anything besides what was given to him. Are you here today only on the Rule 41? No. Okay. I'm here on the particularity, primarily the particularity requirement. Okay, so you're here principally on the Fourth Amendment or principally here on Rule 41? I'm here on the Fourth Amendment. Okay. Now here's... As I was preparing for oral argument, I went through and reread the SDI case clearly, completely. Again, from a different perspective. SDI is the case that the government says that you could incorporate other documents into the warrant. SDI is almost remarkably like this case. SDI involved a warrant similar to this one with an attachment. It was called Appendix B. Appendix B was a generic list, laundry list of the documents and items that they could seize. In SDI, even with it attached and properly served, the court held that it did lack particularity because it did not describe the criminal conduct that was... The underlying criminal conduct, so it lacked particularity. In that case, however, unlike this case, the court also had before... The FBI agents had before them the affidavit. The affidavit listed the probable cause allegations. So in SDI, the court said, okay, because this affidavit says that there was an affidavit of probable cause, that's sufficient to incorporate the affidavit which was present with the officers. It wasn't served... In our case, the officers did have the affidavit when they executed. No, they did not. They only had the affidavit. They did not have the affidavit. So they had attachments that showed what... Just a list of items to be seized. It's 13 pages long. It lists items to be seized. One of the interesting paragraphs in the items to be seized, the government says it doesn't matter if they got... Had the affidavit present or not. The purpose of the affidavit or the allegations within the attachments is to give the agents some idea about what the conduct is so they know what they're seizing. In this case, they listed a bunch of white collar criminal statutes. There was no facts alleged as to what was going on in the case. So when they're looking at their search warrant, they don't know what kind of 1341 mail fraud is going on here. They don't know what this case is about, allegedly. We don't know if it's something to do with... Are there any items seized that you think were not covered by the warrant of affidavit? If you sort of had the affidavit there, is there something they seized as a result of not having an affidavit? Let me give you an example of something. In paragraph C of the attachment B, it says, they're entitled to take all correspondence, whether electronic or written, with any person, entities, or with third parties, regarding the aforementioned violations mentioned in paragraph 6. Well, paragraph 6 is nowhere to be found in the attachment. Paragraph 6 is part of the affidavit. It was not present with the agents. I'm sorry, I thought you were going to point to a piece of evidence that... I am. Okay, so in the process, they went to a storage locker. I don't know if they had permission to go to the storage locker. That's not in the record either. But they went to a storage locker, and they took personal correspondence between Mr. and Mrs... I'm sorry, this is a storage locker in the home? No, miles away. Miles away. They went to a separate storage locker, a locker under the same warrant. I don't know if there was anything developed where they said, can we go to the storage locker? But that's not a principal part of your case today. No, that's not part of my case. Okay, all right. But in the process of executing this warrant, they took all the correspondence between Mr. and Mrs. Nick Benabor that had nothing to do, personal correspondence that had nothing to do with this case. How do you know whether two alleged co-conspirators, in letters to each other, do or do not disclose... The way that they're described in the... Let me finish my question. How do you know whether they discuss the evidence of the conspiracy or not until you read the documents? Well, just the general description of it talks about some other unrelated matter. It says correspondence regarding... If the officers had had the affidavit, how would that have changed their behavior? If they'd had the affidavit? Yeah. They probably wouldn't have taken all of the kids' computers and all of the kids' cell phones and all of the kids' cameras. They wouldn't have taken computer cases. Why not? How would the affidavit have convinced them not to take the kids' computers since the adults could have... They were supposed to have gotten onto the computers to take a look to see if it involved any of the two criminal pieces of conduct here, which was two tax returns, one for TG and one for BB. How do they know without analyzing the hard drives? I don't know. They took cameras. What do cameras have to do with the allegations in this case? They took cash. What does cash have to do with the allegations in this case? They took camera cases. They took computer cases. They took batteries. They took a textbook. They took notes out of a textbook. Were those things not within Attachment B? Those were... I don't know about the cameras. How about the cash? The cash was... They said they could take cash in excess of $2,500. Though I don't know. It doesn't list how much cash was taken. You're raising this point without any support that there was anything wrong. You said cash, right? Cash. I don't know what that has to do with false information. I thought you were answering Judge Bybee's question as to how would this have changed the behavior of the agents that had the affidavit. They might have looked at the affidavit and wondered what cash had to do with the... The amount of cash is specified in Exhibit B, which they had. Right. How would knowing what the crime was, which was an affidavit, have affected their taking of the cash or not taking of the cash? Well, I don't know. They have to take something just because it's listed on Appendix B. I mean, on the attachment. What does cash have to do with filing false income tax returns? How is that proof of filing false income tax returns listed? I don't know what a camera has to do with false income tax returns either. Was the camera part of Attachment B? I've never found anything that said... It says electronic recording equipment. I guess you could call a camera electronic recording equipment. Those are the kids' cameras. It seems to me the question ought to be, was the search warrant validly issued? And I don't think there's, in my mind, any question about that. All you're really arguing about is whether they should have had the list of items to be seized, attached, or not. A procedural matter. No, Your Honor. It's more than that. Even if it was attached, it still lacks particularity because it's exactly identical to the warrant that was served in SDI. It lacked particularity, and what saved it was the affidavit, because it gave some context to the warrant. Thank you. Time's up. Good morning. My name is Robert Conte. I'm here on behalf of the United States. May it please the Court. Let me just answer some of the questions that came up just moments ago. First, the affidavit was not at the scene. Second, the search warrant was under seal, including the Attachment B. The agents did have written permission to go to the storage It was about 300 tax returns that were filed at the Galey address in UCLA. It was also about identity theft. It was about a very sophisticated scheme of identity theft. And so we would submit that the items in Attachment B were clearly linked to the PC in the affidavit. But before I get into that, the government's principal argument, which I think is fairly illustrated by the discussion of what's in the record, was that developed, is that defendant's arguments regarding Rule 41 and the over-breath of Attachment B were not raised in the district court. Well, that's why I asked, that's why I asked counsel whether she was principally here on Rule 41 or the Fourth Amendment. She told us today that she was principally here on the Fourth Amendment. That's fine, Your Honor. I accept that. But what was presented in the briefs before the court was a very strong argument about Rule 41 and deliberate disregard of the agents and trying to paint a picture. That argument appears to have been waived because it was not raised below in any of the circumstances, although it was briefed here. But on oral argument, it doesn't appear to have been developed at all. Okay. Thank you. Then I'll focus on the Attachment B issue, whether Attachment B and the warrant itself was overly broad. That argument, too, was not brought up before the district court. There was no discussion of the items in Attachment B. The very questions that Your Honors are asking, was there something in Attachment B about the camera? How does cash link to the P.C. in the affidavit? Well, the proposition, as I understand it, that opposing counsel is presenting is that you don't know. I mean, there's a list of items, but unless you know what the crime is, which the executing officers don't know from the affidavit, they may have been briefed otherwise. I don't know. But from the affidavit there, they don't know. You can't limit the kind of evidence listed to evidence that's relevant to the crime. That's a proposition. Okay. Excuse me, Your Honor. Go ahead. Okay, thank you. I can address that. Attachment B is not at all like the Attachment B in SDI. Attachment B here, in this case, has a lot of detail that links the specific items to the crimes that are being investigated. And if I could just go to Paragraph C, which was mentioned in the argument. Okay. It's on ER 253. Council quoted Paragraph C, but she only quoted the first sentence. It says, all correspondents, regarding aforementioned violations in Paragraph 6, which is not there. Then it goes on, though, to give a very detailed explanation. This would include memorandums, notes, files, etc., concerning the existence of an organization or criminal enterprise involving the filing of fraudulent tax returns, the theft of Social Security numbers, etc. I don't see how this is not a limiting sentence. This, if anything, is an inclusive or expansive sentence. It says, this also encompass. So this last sentence says there are these things, and then there's more. And these are the things that are more that are covered by the first sentence, right? I understand the Court's observation there, but I will... Well, you gave an explanation. You said, well, there's more. And I'm not understanding your argument about how the more helps you, Ernie, since the more is not exclusive. If it says this is limited to, then that would help you. But as phrased, it doesn't help you at all as a logical matter, does it? Well, it's not the very offensive phrase, including but not limited to. I think it's saying... I'm sorry, why don't you try a yes or no answer, and then you can explain. This doesn't help you at all, does it? It does help you or it doesn't help you? I think it helps us a little bit. I think it helps us in the sense that it gives the agents in this attachment B. We just don't have just a listing of statute numbers. Well, but if they find something that is not covered by the second sentence, right, they would not be precluded from taking it. Other than if this typo, if it wasn't, we didn't have the typo paragraphs 6, we should have gone back to, we should have said paragraph 1, which has, I respectfully submit, these are the violations that were... Oh, I see. Paragraph 1 of... Of what? Attachment B at ER 250. So we have a typo there that says paragraph 6. It really should be paragraph 1, the affirmation violations mentioned in... Oh, I see. So this is paragraph 6 is an internal paragraph. It's supposed to be paragraph 1. That's a typo, Your Honor. I see. Because paragraph 6 actually referred to the affidavit. I think the way that these things are put together, they often cut and paste them. And so I assume paragraph 6, I don't know off the top of my head, were the statutes in the affidavit. But this... I see. So paragraph 1 does list the kind of crimes. Yes. And so if I was the one that had drafted this, I would have been more careful with that and put paragraph 1. There's no question in your mind that the search warrant was properly obtained, right? No question in my mind, Your Honor. And the complaint before us is whether a procedural device was followed or not. Is that fair? I would understand that as the remaining claim, yes. Okay. I guess I understand it after all. And so, you know, just going through attachment B, you can see that the first eight categories are limited by a date range. Other categories we have here on ER 255 clearly related to tax returns. We talked about paragraph C. There's the mention of cash. There's the mention of travel records and other things. We had a far-ranging identity theft and false return scheme that the agents were trying to unravel. I think we understand. Thank you. Thank you very much, Your Honor. Okay. Case just argued. We'll stand submitted. Move.
judges: Kozinski, Bybee, Walter